1514.   RALEIGH & GASTON RAILROAD COMPANY *et al.*
    *v.* WESTERN & ATLANTIC RAILROAD COMPANY.

1. The mere fact that A has a right of action against B, involving an act or omission of B which renders A liable to C, does not necessarily give A, when sued by C, a remedy over against B.  Even though A might have a right of action against B, this right of action would not necessarily give him such a remedy over against B as would enable him to vouch B into the case when sued by C upon a cause of action arising from breach of contract for the performance of which B was in no way guarantor or security.  For one who is himself sued to have a right to vouch another into court, it is not enough that the vouchee is liable in some way to the voucher, but it must appear that the liability of the vouchee arises from the identical cause of action upon which the voucher is in danger of being held liable, or that the ground of the liability arises from the same subject-matter.
2. An action sounding in tort, to recover damages for injury to personal property, is barred in four years (Civil Code, § 3899) ; and' therefore, when more than four years have elapsed before the bringing of the suit, it is too late for one who is sued for liability arising out of a contract to vouch another who is liable to him in tort.
3. A right of action for a tort accrues immediately upon the infliction of the injury.

Action for damages, from city court of Atlanta—Judge Reid. November 9, 1908.

Argued December 18, 1908.—Decided September 30, 1909.

*Brown & Randolph,* for plaintiffs.

*Tye, Peeples, Bryan & Jordan,* for defendant.

RUSSELL, J.   The Raleigh & Gaston Railroad Company et al. brought suit against the Western & Atlantic Railroad Company to recover the amount of a judgment obtained against the Raleigh & Gaston Railroad Company et al. by the Pullman Company. ' The trial judge sustained a general demurrer to the petition and dismissed the suit, and the plaintiffs excepted.   The suit was brought under section 5234 of the Civil Code of 1895, which is as follows: "Where a defendant may have a remedy over against another, and vouches him into court, by giving notice of the pendency of the

suit, the judgment therein will be conclusive upon the party vouched, as to the amount and right of the plaintiff to recover." According to the allegations of the petition, in July, 1896, the car "Emison," which belonged to the Pullman Company, was in the possession of the Raleigh & Gaston Railroad Company (hereinafter called the Raleigh & Gaston) et al., as bailees, and while in their possession was seriously damaged by the Western & Atlantic Railroad Company (hereinafter called the W. & A.). The Pullman Company had a contract with the Raleigh & Gaston which bound the latter company to make all necessary repairs within a reasonable time on cars damaged while in its possession, no matter from what cause the damage occurred or what casualty necessitated the repairs. See *Raleigh & Gaston R. Co.* v. *Pullman Co.*, 122 Ga. 700 (50 S. E. 1008). The Pullman Company sued the Raleigh & Gaston for a breach of this contract, and recovered a judgment. When suit was first entered against the Raleigh & Gaston, it vouched the Western & Atlantic into court and gave it notice to defend the suit. This suit was instituted on July 10, 1901. It is claimed in the petition that the Western & Atlantic really did the damage to the car "Emison," though the car was then in the possession of the Raleigh & Gaston; and that while the Raleigh & Gaston might be liable to the Pullman Company by virtue of the contract, the Western & Atlantic would be liable to the Raleigh & Gaston by reason of the tort to the property in the possession of the Raleigh & Gaston as bailee. It is claimed that having vouched the Western & Atlantic into court in the original suit, and judgment having been obtained against the voucher in that suit, the judgment is conclusive against the vouchee as to the amount and right to recover against the voucher, and therefore judgment is asked by the Raleigh & Gaston against the Western & Atlantic for the amount of that judgment, with interest and costs.

1. The question as to whether or not the allegations of the petition make out a case necessitates a construction of section 5234 of the Civil Code. This section of the code is not of statutory origin, but is simply an adaptation of the language employed by the Supreme Court in the cases of *Western & Atlantic R. Co.* v. *Atlanta*, 74 Ga. 774; *Faith* v. *Atlanta*, 78 Ga. 779 (4 S. E. 3). By an examination of the sources from which the code section was adopted, it will be seen that it is merely a statement of a well

known common-law principle, and that it was not the intention of the codifiers, by inserting it in the code, to hedge it about with any unusual limitations or give to it any additional scope.   The principle embodied in the code section is referred to and discussed in *Bullock* v. *Winter*, 10 *Ga.* 214.   Considering the origin of the code section, it is clear that the remedy over, which will authorize the voucher to give another (the vouchee) notice of the pendency of the suit and require him to come in and defend it, so that the judgment obtained therein will be conclusive upon the vouchee as to the amount and the right of the original plaintiff to recover, must be such a remedy over against the vouchee as that the issues in the two suits would be practically identical, both on the question of liability and the question of the amount of damages. There must at least be such a relation between the parties that the defenses which the vouchee could set up in the original suit would be the same defenses that he could set up if he were sued by the voucher.   As is said in Consolidated Machine Co. *v.* Bradley, 171 Mass. 127 (50 S. E. 464, 68 Am. St. Rep. 409), "If a party is obliged to defend against the act of another, against whom he has a remedy over, and defends solely and exclusively the act of such other party, and is compelled to defend no misfeasance of his own, he may notify such party of the pendency of the suit and may call upon him to defend it;   .   .   but this principle does not apply where one is defending his own wrong, or his own contract, although another party may be responsible to him."

The suit of the Pullman Company against the Raleigh & Gaston was upon a breach of contract growing out of a failure to repair the car "Emison," and interest was claimed and recovered for failure to repair within a reasonable time.   The right of action of the Raleigh & Gaston against the Western & Atlantic, according to the allegations of the petition, depends upon the former's right to recover for the tort—the damages arising from the negligent action of the Western & Atlantic in running its train into the car and damaging it.   The defenses which could be set up to defeat the right in the suit between the Pullman Company and the Raleigh & Gaston were wholly different from the defenses which could be set up to defeat the right asserted in the suit between the Raleigh & Gaston and the Western & Atlantic.   While it is perhaps not necessary that actual privity should be shown to exist between the

voucher and the vouchee, there is nothing better settled than that the liability of the voucher and the vouchee shall grow out of the same subject-matter. This is true of every case arising under this section which the Supreme Court has passed upon. Under the terms of the contract between the Pullman Company and the Raleigh & Gaston, the latter company was bound to repair all damages happening to cars while in its possession, even when the injury to the cars was the result of casualty or accident. Under this contract the. Raleigh & Gaston was bound to make the repairs, no matter how they became necessary, if the necessity arose while the cars were in its possession. The liability of the Western & Atlantic to the Raleigh & Gaston was entirely independent of and distinct from the liability of the Raleigh & Gaston to the Pullman Company. The right which was asserted by the Pullman Company against the Raleigh & Gaston was the right to be indemnified for breach of contract in failing to repair the car; the right which the Raleigh & Gaston had against the Western & Atlantic was the right to recover damages for the tort in negligently damaging the car. There was not only no privity, but there was total want of identity in the two causes of action. They differed not so much in the fact that the liability in the one case was in tort, while in the other it was in contract, as in the fact that the contract related to one thing and the liability in tort depended upon a different thing. The liability in the one case depended upon negligence; the liability in the other case existed without regard to negligence.

The case of *McArthor* v. *Ogletree,* 4 *Ga. App.* 429 (61 S. E. 859), is a case (as pointed out by counsel for the defendant in error) in which there was no contractual liability in the first suit, while there was a contractual liability on the part of the vouchee to the voucher to indemnify the voucher for damages recovered in the first suit. That was a case in which one person had by contract agreed to indemnify another person in the event that a judgment was obtained for a tort; and both of the liabilities included the same subject-matter. For this reason the *McArthor* case is not in point in support of the proposition asserted by the plaintiff in error, though it does furnish an instance of where contractual liability may overlap and include liability arising by operation of law. If in the present case the Raleigh & Gaston had contracted to pay all damages arising from negligence only, then it might be that.

the Raleigh & Gaston could properly have vouched the Western & Atlantic into court, since it was the act of the latter which really caused the damage to the car.    Or if the Western & Atlantic had by contract agreed to indemnify the Raleigh & Gaston for any liability which might arise by virtue of its contract with the Pullman Company, a simple case for vouching would be made out.    In the *McArthor* case the vouchee was by contract an indemnifier, and had expressly agreed to reimburse the voucher for any damage he might sustain by virtue of the first suit.    It was a case where the party vouched had by contract assumed liability in the event the other party to the contract became liable in tort.    The case was not unlike that of warrantors of title to real estate.    But if due regard be had to the purpose of vouching and the object which is sought to be accomplished thereby, it will be seen that the present case is not of that kind.    The purpose of vouching is to enable the vouchee to come in and present any defense which would tend to relieve either himself or the voucher from liability in the action then pending.    The object to be gained is an end of litigation; and if the act of the vouchee is the real thing complained of, so that if there is a recovery by the injured party against the voucher he can turn right around and claim indemnity from the vouchee, then it is to the interest of the State that a multiplicity of suits should be avoided by requiring the vouchee to appear in the original suit and set up any defense which he has.    But before he can properly be vouched, the action between the injured party and the voucher must be of such a kind that the vouchee could set up therein any defense which he could set up if the suit were proceeding against him directly.    But suppose in this case the vouchee had come into court in the original suit between the voucher and the injured party, and had a perfect defense, namely, that it was wholly without negligence, so that the damage to the car, so far as it was concerned, was damnum absque injuria, it could not set up this defense to a suit based on a contract wherein the defendant had agreed to pay all damages regardless of how they may have been occasioned, whether by a pure accident or other casualty which could not be the foundation of a suit in tort based on negligence.    The vouchee might have had a complete defense on the ground that the right of action against it was barred by the statute of limitations, and yet could not set this defense up in the suit

between the voucher and the party suing.    The Raleigh & Gaston could have defeated the action brought against it by the Pullman Company by proving non est factum as to the contract which was the basis of the suit, even though it appeared that the Western & Atlantic had been grossly negligent in inflicting the injuries on the car.    In fact the Raleigh & Gaston did attempt to defeat the suit by showing that the contract was executed on its behalf by an agent lacking in authority.    Suppose it had been successful in defeating the suit on that ground; the Pullman Company then could have sued the Western & Atlantic for the tort in damaging its property by negligence; so that the Western & Atlantic would have gained nothing by appearing in the original suit and defending it.

Counsel for the plaintiff in error clearly state the principle embodied in section 5234 as follows: "This section of the code [§ 5234] gives a defendant who is sued on a cause of action for which some one else is justly responsible a right to vouch this some one else into the case and call upon the party primarily responsible for the complaint of the moving party to come in and defend the case; and when such party has been thus vouched in, he is bound by the judgment rendered as to the amount and right of the plaintiff to recover."    We think, however, that the learned counsel misapprehend the case at bar, in concluding that the Western & Atlantic was justly responsible for the breach of contract of the Raleigh & Gaston.    Under the contract the repairs were to be completed within a reasonable time.    The breach of contract was the failure to have the repairs made within a reasonable time.    Granting that the Western & Atlantic was responsible for the original injury to the car "Emison," and that this negligence created the necessity or raised the duty on the part of the Raleigh & Gaston to have the repairs made on the car, still there is nothing to show that the Western & Atlantic is justly responsible for the failure of the Raleigh & Gaston to comply with its duty to have the repairs completed within a reasonable time. The mere fact that the Raleigh & Gaston, if liable to the Pullman Company for breach of contract, might have an independent cause of action against the Western & Atlantic, in which it could recover practically what it had been compelled to pay to the Pullman Company, would not give the Raleigh & Gaston a right to

vouch the Western & Atlantic into the original suit, or give a remedy over, in the meaning of section 5234 of the code. In order for the principle embodied in this section of the code to become applicable in any case, it must appear that the person vouched as responsible over is no longer to be regarded as a stranger to the action, for the substantial reason that he has the right to appear and defend, *and has the same means of* defeating recovery as if he were a real party upon the record, and that his rights of defense are such that he could not afterwards be heard to contest the justice of the claim, having neglected to defend himself in the action brought against a party whom he was bound to indemnify. The Western & Atlantic would not have had the same means of defeating the claim asserted by the Pullman Company against the Raleigh & Gaston as if it had been a real party to the record, or if the suit had been proceeding directly against it. In the latter event it could have defeated the action by showing that it was not negligent, whereas such a defense would have availed it nothing in the suit between the Pullman Company and the Raleigh & Gaston. Or it could have shown that any right of action against it had been barred by the statute of limitations, and yet this defense would have been of no avail in the suit between the Pullman Company and the Raleigh & Gaston. And after all, the real reason for the rule stated in section 5234, as we have already said, is to be found in *Brown* v. *Chaney,* 1 *Ga.* 410; *Bullock* v. *Winter,* 10 *Ga.* 214. It is there said that the rationale of the rule is found in the maxim expedit reipublicæ ut sit finis litium. Where two suits can be avoided by calling on the party higher up in the line of liability and whose act is the real gist of the complaint, the law provides a method by which the person secondarily liable, so to speak, may vouch the person primarily liable into court and end the entire controversy by one suit. But in order for this principle to be applicable, the person vouched must have the same means of defense as he would have if the suit were proceeding directly against him. It was not the purpose of the law, in creating the right to vouch, to cut off the right of the vouchee to assert any defense which he might have had without it. By looking to the original suit between the Pullman Company and the Raleigh & Gaston (122 *Ga.* 700), it will be seen that the only defense offered to defeat the cause of action there asserted was the lack of author-

ity in the agent of the Raleigh & Gaston to execute the contract; and also that the items of damage were excessive. So far as the record shows, the Western & Atlantic would have been an entire stranger to this defense, and could not have aided in its assertion; while the only defenses which the law gave it to avoid its act in damaging the car, to wit, lack of negligence, or the bar of the statute of limitations, would have been wholly out of place in defense to that suit. This being so, nothing would have been gained by a merger of the two cases; and nothing is better settled than that when the reason for the rule fails, the rule itself fails. Or, to paraphrase the maxim more concretely as to the case at bar, the rule can not be applied, because the reasons which are the foundation of the rule do not appear.

2. It is hardly necessary, however, in this case to decide whether or not this is a proper case for vouching, since it appears from the allegations of the petition that, at the time of the institution of the suit by the Pullman Company against the Raleigh & Gaston, any right of action which existed against the Western & Atlantic, the vouchee, had been barred by the statute of limitations. The injury to the car "Emison" took place on July 14, 1896. The right of action in the Raleigh & Gaston to sue the Western & Atlantic for this injury accrued at that time; the right being to sue a tort-feasor for injury to property in its possession as bailee. The Pullman Company instituted suit against the Raleigh & Gaston for breach of the contract on July 10, 1901. It will be seen that this was nearly five years after the right of action against the Western & Atlantic for the tort accrued, and this right of action was barred. *Peterson* v. *Georgia Railroad Co.*, 97 *Ga.* 798 (25 S. E. 370). In the case of injury to a thing bailed there is an immediate right of action in the bailee against the wrongdoer. Civil Code, §§2909, 3888, 3889; New Jersey Elec. Ry. v. New York, L. I. & W. R. Co., 61 N. J. L. 287 (41 Atl. 1116, 43 L. R. A. 849). The Raleigh & Gaston had a right of action against the Western & Atlantic immediately upon the injury to the car, and this right of action became barred in four years. Civil Code, §3899. Since, therefore, any remedy over, which the Raleigh & Gaston had against the Western & Atlantic, was barred by the statute of limitations at the time of the attempted vouching, the

right of action could not be revived by merely giving it notice to come in and defend a suit between different parties.

3.   It is strongly urged by learned counsel for the plaintiff in error that the Raleigh & Gaston was required to wait until the termination of the suit brought by the Pullman Company before the right of action against the Western & Atlantic accrued, or at least before it would be barred; for until then the liability of the Raleigh & Gaston had not been established by law; and it had never been determined that it would have a right of action against the Western & Atlantic.   It is perhaps necessary to discuss briefly this view of the case; because if the Raleigh & Gaston could properly have vouched the Western & Atlantic into court in the original suit, and had done so before its right of action against the Western & Atlantic had become barred, the statute would not have run in favor of the vouchee.   The vouchee would have been constructively, if not actually, before the court so as to stop the running of the statute.   But the right of action in the Raleigh & Gaston against the Western & Atlantic accrued immediately upon the injury to the car, and it was imperative to assert this right before it was barred by the statute of limitations.   It was not necessary for the Raleigh & Gaston to wait until the Pullman Company had recovered a judgment against it.   Its right of action was complete at that time, and it could have recovered a judgment against the Western & Atlantic before any claim of any kind was asserted by the Pullman Company under the contract.   That the right of action in the Raleigh & Gaston was complete immediately after the injury is clearly established by the cases of *Baker* v. *Boozer,* 58 *Ga.* 195, and *Gould* v. *Palmer,* 96 *Ga.* 798 (22 S. E. 583).   We conclude, therefore, that the petition fails to show any remedy over against the Western & Atlantic, within the meaning of section. 5234, and that the judge did not err in sustaining the demurrer, especially since it appears that nearly five years had elapsed at the time of the vouching, so that any remedy of any kind existing against the vouchee had been barred by the statute of limitations.                    *Judgment affirmed.*